# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| T. LEVY ASSOCIATES, INC. | : CIVIL ACTION |
| --- | --- |
| v. | : NO. 16-4929 |
| KAPLAN, *et al.* | : |

KEARNEY, J.                                                                                     May 4, 2017

## MEMORANDUM

A retail business should expect its senior manager to act with fidelity to the business. While the manager's duty is no greater as a matter of law because he married the daughter of the founder/majority shareholder of the business, we must realistically appreciate a founder of a business turning day-to-day management over to his son-in-law expects his family will protect his business. He may also expect this fidelity even if his daughter (wife of the manager) follows in his footsteps and operates a similar retail business. Today, we address the difficult situation arising when the father's business is allegedly harmed by a pattern of actions designed to enrich the daughter and son-in-law with significant losses to their father's business. While the father's retail business withdrew claims under the Lanham Act and Computer Fraud and Abuse Act, it did adduce substantial evidence requiring our jury's credibility findings on its claims of conversion, fraud, breach of fiduciary duty, misappropriation of trade secrets, tortious interference with contract and a violation of the Racketeer Influenced and Corrupt Organizations Act. In the accompanying Order, we grant in part (upon consent) and deny in part the daughter's and son-in-law's motion for summary judgment.

I. **Undisputed Facts.**[1]

Ted Levy is the majority shareholder and president of T. Levy Associates, Inc., a business owning a retail store founded by him to sell beauty products.[2] ("Company"). Mr. Levy's

son-in-law Michael Kaplan worked at the Company for decades, and by 2008, Mr. Levy appointed Mr. Kaplan as the Company's Vice President.[3] As Vice President, Mr. Kaplan ran the Company's entire business and had "carte blanche" to perform his duties.[4] Mr. Levy retired but maintained periodic contact with the Company's sales operations.[5] By 2013, Mr. Kaplan ceased his periodic contact with the Company.[6]

Mr. Levy's daughter Nina Kaplan—married to Mr. Kaplan—also operates businesses in the beauty industry, including a business called BLC Beauty, Inc.[7] In 2012, the Company closed a retail store in Newtown, Pennsylvania, and BLC Beauty took over the same space.[8]

For purposes of their motion for summary judgment, Mr. Kaplan, Mrs. Kaplan, and BLC Beauty do not dispute one or more of them:

- Fraudulently charged personal and BLC Beauty business purchases to the Company's American Express account;
- Used the Company's funds to purchase inventory for BLC Beauty;
- Accessed without authorization and damaged the Company's computer and destroyed confidential business data owned by the company;
- Diverted wholesale business from the Company to BLC Beauty;
- Stole the Company's computer data and business records to divert wholesale sales to BLC Beauty; and,
- Embezzled Company funds to pay rent for BLC Beauty's premises.[9]

In early 2016, Mr. Levy learned the Company had less money in the bank, less inventory in its warehouse, and significantly higher accounts payable than Mr. Kaplan led him to believe.[10] On March 16, 2016, shortly after discovering those issues, Mr. Levy terminated Mr. Kaplan's employment.[11] Mr. Levy hired a forensic accountant to audit the Company, and the accountant concluded Mr. Kaplan caused $492,922.99 in losses to the Company.[12] The Company's expert reported Mr. Kaplan diverted eight wholesale customers, which accounted for approximately 75% of the Company's wholesale sales.[13] After losing this business, Mr. Levy decided to forgo the

Company's wholesale business.[14]

At some point after Mr. Levy fired Mr. Kaplan, Mr. Kaplan went into the store with his daughter and his daughter's boyfriend, Deyvid Demelo.[15] Company employees told Mr. Levy they could not use the computer after the group left the building.[16]

The Company then sued Mr. Kaplan, Mrs. Kaplan, Mr. Demelo, and BLC Beauty for a variety of federal and state claims, including violations of the Racketeer Influenced and Corrupt Organizations Act,[17] the Lanham Act,[18] the Computer Fraud and Abuse Act,[19] and state law claims of conversion, fraud and breach of fiduciary duty, misappropriation of trade secrets,[20] and tortious interference with existing and prospective contractual relationships.

Defendants move for summary judgment, arguing the Company's claims under the Lanham Act, the Computer Abuse and Fraud Act, RICO, and his claim for intentional interference with contractual relations fail as a matter of law.[21] Defendants also argue the conversion claims are barred by the statute of limitations and some of its claims are barred by the statute of frauds. The Company agrees it lacks evidence for violations of the Lanham Act and the Computer Abuse and Fraud Act, and we grant Defendants' motion on these claims. We deny Defendants' motion in all other respects.

## II. Analysis

### A. We deny summary judgment as to the RICO claims.

Defendants argue the Company does not satisfy the continuity element of the "pattern of racketeering activity" requirement under RICO.[22] Defendants also argue there is no evidence Mr. Kaplan engaged in "wrongful or unauthorized" conduct, because Mr. Kaplan had "carte blanche" authority to run the Company[23]

3

### i. The Company satisfies the continuity element.

The Company satisfies the continuity element of RICO's "pattern of racketeering activity" requirement. For the purposes of this motion, Defendants do not dispute they engaged in predicate acts. As they do not dispute these predicate acts, they also do not dispute the predicate acts occurred between 2010 through March 16, 2016—the date Mr. Levy terminated Mr. Kaplan. Defendants' sole argument is Mr. Kaplan's March 16, 2016 termination ended the "necessary future threat which must be proven to establish a RICO claim."[24]

The threat of continuity, however, need only be established when the pattern of racketeering activity is open ended.[25] "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."[26] "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time."[27] In open-ended cases where continuity cannot be established, "liability depends on whether the *threat* of continuity is demonstrated."[28]

Our Court of Appeals found substantial continuity in a closed-ended pattern of racketeering where the scheme lasted over three years.[29] The predicate acts in this case occurred over the course of six years. Because the conduct in this case occurred over a substantial period of time, the Company need not prove a threat of continuity.

### ii. We reject Defendants' argument the Company authorized Mr. Kaplan to misappropriate funds.

Defendants acknowledge "there is a substantial dispute as to the purposes and nature of each disbursement" Mr. Kaplan made while running the Company.[30] Defendants also agree "whether there was a misappropriation, fraud or theft is subject to material dispute."[31]

4

Nevertheless, Defendants argue because Mr. Kaplan "had full authority to make every decision" in his capacity as the Company's vice president, his conduct cannot constitute fraud or misappropriation.[32] Putting aside Defendants' inconsistent positions as to the existence of fraud and misappropriation, Defendants cite no authority a corporate officer with control over Company assets cannot—as a matter of law—use Company funds in a way constituting fraud or misappropriation. We reject this argument.

## B. The conversion claim is not barred by the statute of limitations.[33]

Defendants argue the Company's claim for conversion is barred by Pennsylvania's two-year statute of limitations.[34] The statute of limitations begins to run "as soon as the right to institute and maintain a suit arises."[35] Mistake, misunderstanding, or lack of knowledge do not toll the statute of limitations.[36]

One recognized exception to the tolling of the statute of limitations is the doctrine of fraudulent concealment, which provides a "defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts."[37] The concept of fraud is understood in the "broadest sense, which includes an unintentional deception."[38] Under this doctrine, the statute of limitations begins to run "when the injured party knows or reasonably should know of his injury and its cause."[39] The Company has the burden of proving fraudulent concealment by "clear, precise, and convincing evidence."[40]

Under this doctrine, there must normally be "an affirmative and independent act of concealment that would divert or mislead the plaintiff from discovering the injury. Silence can constitute fraud only where there is an affirmative duty to disclose because of a fiduciary

5

relationship between the parties or a similar relationship of trust and confidence."[41] Mr. Kaplan had a fiduciary duty to the Company as its vice president.[42] Mr. Kaplan's silence can therefore constitute fraud for the purposes of tolling the statute of limitations. The statute of limitations does not bar the Company's conversion claim because there is a genuine dispute of material fact whether Mr. Kaplan's silence while serving as vice president constitutes fraud under the doctrine of fraudulent concealment.

### C. There is a genuine issue of material fact as to the Company's claim for interference with contractual relations.

In Pennsylvania, a claim for intentional interference with an existing or prospective contractual relationship requires: (1) an existing or prospective contractual relation between the plaintiff and a third party; (2) purposeful action by the defendant specifically intended to harm the existing relation or prevent the prospective relation from occurring; (3) the absence of privilege or justification; and (4) the defendant's conduct caused actual legal damage.[43]

Defendants argue the Company cannot show "interference with any customer" because Mr. Levy "made a management decision not to pursue wholesale business."[44] The Company counters Mr. Levy's decision to forgo wholesale business arose *after* Mr. Kaplan already diverted the Company's wholesale business.[45] The Company's expert reported Mr. Kaplan diverted eight wholesale customers, which accounted for approximately 75% of the Company's wholesale sales.[46] Viewing the facts in the light most favorable to the Company, Defendants' argument lacks merit at this summary judgment stage.

### D. The Company's claims are not barred by the statute of frauds.

Defendants argue the Pennsylvania statute of frauds bars claims predicated on Mr. and Mrs. Kaplan's alleged promises to pay loans taken out by the Company.[47] In Pennsylvania, oral

promises to pay for the debt of another are unenforceable.[48] The Company does not claim Defendants breached an oral contract, and it does not base any RICO predicate act on such a claim. The Company alleges the RICO predicate acts include mail fraud,[49] misappropriation of trade secrets,[50] unlawful access of data on a computer,[51] removing or concealing a record with intent to deceive,[52] and theft by deception.[53] We accordingly reject Defendants' argument aspects of the RICO claims are barred by the statute of frauds.

### E. We grant summary judgment for Defendants on the Lanham Act claim.

The Company admits it cannot satisfy its burden of proof for its Lanham Act claim.[54] We dismiss this claim as there is no genuine dispute of fact and Defendants are entitled to judgment as a matter of law.

### F. We grant summary judgment for Defendants on the Computer Abuse and Fraud Act claim.

The Company admits its claim under the Computer Abuse and Fraud Act should be dismissed.[55] We grant summary judgment in favor of Defendants on this claim.

### G. We grant summary judgment on the claims against Mr. Demelo.

The Company concedes it lacks sufficient evidence to hold Mr. Demelo liable.[56] We grant summary judgment in favor of Mr. Demelo as to all claims against him.

### III. Conclusion

We grant in part Defendants' motion for summary judgment and dismiss the Company's claims against Deyvid Demelo, its claims under the Computer Abuse and Fraud Act, and its claims under the Lanham Act upon the Company's consent. We deny the motion in all other respects.

---

[1] We consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to" the Company, "the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d

262, 264 (3d Cir. 2006) (citations omitted). Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. Defendants filed its Statement of Undisputed Material Facts at ECF Doc. Nos. 44 and 62-3. Defendants filed an appendix at ECF Doc. Nos. 45, 46, 47 and 62-4. The Company responded to Defendants' Statement of Undisputed Material Facts at ECF Doc. No. 66. The Company added documents to the Appendix at ECF Doc. Nos. 67 through 70. References to the exhibits in the appendices shall be referred to by bates number, for example, "Appx. 1."

[2] ECF Doc. No. 13, at pp. 8–9, ¶ 5; ECF Doc. No. 66, at p. 1, ¶ 1.

[3] ECF Doc. No. 13, at p. 9, ¶ 7. Appx. 215; Appx. 248.

[4] ECF Doc. No. 66, at p. 2, ¶ 4; Appx. 204.

[5] Appx. 248.

[6] Appx. 248.

[7] ECF Doc. No. 66, at p. 2, ¶ 7.

[8] Appx. 248.

[9] ECF Doc. No. 66, at p. 11, ¶ 4. Defendants acknowledge "whether there was a misappropriation, fraud or theft is subject to material dispute." ECF Doc. No. 62-2, at p. 6.

[10] Appx. 248.

[11] ECF Doc. No. 13, at p. 9, ¶ 12.

[12] Appx. 245–46.

[13] Appx. 294.

[14] Appx. 217.

[15] Appx. 253–55.

[16] Appx. 246.

[17] 18 U.S.C. § 1962(c).

[18] 15 U.S.C. § 1125(a)(1)(B).

[19] 18 U.S.C. § 1030(a)(5) & § 1030(b).

[20] 12 Pa. C.S. § 5301 *et seq.*

[21] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, "we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Mancini v. Northampton Cnty.*, 836 F.3d 308, 313 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322–323).

[22] ECF Doc. No. 62-2, at p. 7.

[23] ECF Doc. No. 62-2, at p. 8.

[24] ECF Doc. No. 62-2, at p. 7.

[25] *United States v. Pelullo*, 964 F.2d 193, 208 (3d Cir. 1992) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)).

[26] *H.J. Inc.*, 492 U.S. at 241.

[27] *Id.* at 242.

[28] *Id.*

[29] *Tabas v. Tabas*, 47 F.3d 1280, 1294 (3d Cir. 1995).

[30] ECF Doc. No. 62-2, at p. 8.

[31] ECF Doc. No. 62-2, at p. 6.

[32] ECF Doc. No. 62-2, at p. 9.

[33] Defendants also argue the Company's claims for "failure to pay" loans are barred by the statute of limitations. ECF Doc. No. 43-1, at p. 8. The Company has no claim for "failure to pay" loans. The Company's state law claims are for conversion, misappropriation of trade secrets, tortious interference with contractual relationships, and "fraud and breach of fiduciary duty." ECF Doc. No. 1, at p. 30. Even if the Company's right to relief depended on a timely failure to pay claim, such claim would not be barred by statute of limitations because of a genuine dispute of material fact as to whether Mr. Kaplan's silence constitutes fraud, which would toll the statute of limitations under the doctrine of fraudulent concealment.

[34] *Douglas v. Joseph*, 656 F. App'x 602, 605 (3d Cir. 2016) (citing 42 Pa. C.S. § 5524(3)).

[35] *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005) (citing *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)).

[36] *Id.* (citing *Nesbitt v. Erie Coach Co.*, 204 A.2d 473, 475 (Pa. 1964)).

[37] *Id.* 858, 860.

[38] *Id.* at 860.

[39] *Id.* at 861.

[40] *Id.* (citing *Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987)).

[41] *Mest v. Cabot Corp.*, 449 F.3d 502, 517 (3d Cir. 2006) (citing *Chiarella v. United States*, 445 U.S. 222, 227–28 (1980), *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. 1992), and *Smith v. Renaut*, 564 A.2d 188, 192 (Pa. Super. 1989)) (internal citation omitted).

[42] *See Seaboard Indus., Inc. v. Monaco*, 276 A.2d 305, 308 (Pa. 1971).

[43] *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (quoting *Strickland v. University of Scranton*, 700 A.2d 979, 985 (Pa. Super. 1997)).

[44] ECF Doc. No. 43-1, at p. 9–10.

[45] Appx. 217

[46] Appx. 294.

[47] ECF Doc. No. 43-1, at p. 8.

---

[48] 33 P.S. § 3.

[49] 18 U.S.C. §§ 1341, 1346.

[50] 12 Pa.C.S. § 5302.

[51] 18 Pa. C.S. §§ 7611(a), 7613, 7614, 7615.

[52] 18 Pa. C.S. § 4104(a).

[53] 18 Pa. C.S. § 3922.

[54] ECF Doc. No. 66, at p. 3, ¶ 10; ECF Doc. No. 65, at p. 1.

[55] ECF Doc. No. 65, at p. 1.

[56] ECF Doc. No. 65, at p. 12 n.6.