IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| T. LEVY ASSOCIATES, INC. | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | NO. 16-4929 |
| KAPLAN, *et al.* | : | |

KEARNEY, J.                                                              August 21, 2017

## **MEMORANDUM**

We now return to the unfortunate saga of an elderly widowed father suing his adult daughter and son-in-law for racketeering and related misconduct in managing the father's beauty supply business resulting in family fissure better resolved outside the courtroom. As the family could not amicably resolve their money issues for reasons best left to their consciences, we asked our jury to address the credibility of many witnesses in determining whether the daughter and son-in-law, along with her separate beauty supply business, engaged in racketeering, misappropriation, conversion, breach of fiduciary duty and tortious interference in light of defenses of the father's consent, knowledge and waiver. After the jury unanimously found the daughter, son-in-law, and their company liable for most, but not all of the father's claims, they now move to set aside the jury's verdict on grounds largely waived at trial or not constituting clear error. This lawsuit further fractures a once-close family over money but, having chosen to gamble on this jury route, we must respect the jury's consistent verdict for much, but not all, of the father's claimed damages based on the adduced evidence and correct instructions on the governing law. We deny the son-in-law's, daughter's, and her company's post-trial motion in the accompanying Order.

**I.     Background.**

T. Levy Associates, Inc. ("the Company") is a beauty products company partially formed and largely owned by Ted Levy. In the mid-2000s, Ted Levy entrusted the Company's business operations to his son-in-law Michael Kaplan.[1] Ted Levy's daughter Nina Kaplan—whose spouse is Mr. Kaplan—owns a beauty products wholesale and retail operation called BLC Beauty, Inc. Nina Kaplan is a talented artist/graphic designer and relied upon her husband and bookkeeper to assist her in managing and operating BLC Beauty.

In September 2016, the Company sued Mr. Kaplan, Mrs. Kaplan, and BLC Beauty for a variety of federal and state law claims, including violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"),[2] conversion, breach of fiduciary duty, misappropriation of trade secrets,[3] and tortious interference with existing and prospective contractual relationships. Stated briefly, the Company's claims arose from Defendants' misappropriation and conversion of Company funds, products, and contractual relationships while Michael Kaplan managed the Company and Nina Kaplan owned and managed BLC Beauty.

After discovery, summary judgment motions and an abundant variety of pretrial motions, we empaneled a jury to resolve multiple fact disputes in a family-run business largely relying on each other's good faith oral statements rather than lawyered documents. During the trial, the Company's damages expert David Anderson, a forensic accountant, testified the Company's damages exceeded $1,660,000.[4] After the Company's case-in-chief, Defendants did not move for judgment as a matter of law.[5]

We held a charging conference with counsel. During our jury charge, we instructed the jury about the Company's burden of proof under the preponderance of the evidence standard. We

2

then instructed the jury on Defendants' burden of proof on their affirmative defenses:

> Conversely, to the extent the defense has said something to you which they claim is a reason why they should win, not just accusing them, not just saying the plaintiff has not proven its case, but also claiming its claim or any defense, if they don't prove it to you by a preponderance, then they have not met their standard of proof.[6]

After we finished our charge, we invited counsel to sidebar to preserve any objection to our charge. Defendants objected to the preponderance of evidence instruction on their defenses, to the extent they raised any. But when we asked Defendants if they wanted us to provide a curative instruction, they declined:

> [The Court:] Is there anything that counsel would like to see me at sidebar on any issue?
>
> Mr. Dugan: No.
>
> . . . .
>
> Mr. Winterhalter: The preponderance charge, you had added a contrary instruction that was not in here. There's a counterclaim in this case and you said that if the – you said if T. Levy Associates failed to meet its burden of proof, find in favor of the defendant. If the defendant did not present evidence to establish defenses, then you are held to the same standard. I believe that this case –
>
> The Court: You have no defenses.
>
> Mr. Winterhalter: I do have defenses, but if they don't produce any evidence of the claim then they lose.
>
> The Court: Sure, I think I said that.
>
> Mr. Winterhalter: You did say that, but then you also said if the Defendants don't meet their burden of the preponderance of the evidence, then they lose.
>
> The Court: What I meant is – I think what I said was the defense does not – the defense does not – you can't accept their defense if they have not met the preponderance of the evidence. I thought you were raising defenses.

3

| | |
|---|---|
| Mr. Winterhalter: | I certainly am rising [sic] defenses. There is not an issue with that. |
| The Court: | I can read the sentence again. I don't really care. |
| Mr. Winterhalter: | I don't think it's necessary. |
| The Court: | Your objection is noted. |
| Mr. Winterhalter: | I think I am fine.[7] |

The jury rendered a verdict against Defendants on all but one of the Company's remaining claims.[8] For example, the jury found Mr. Kaplan did not misappropriate trade secrets, but both he and BLC Beauty, Inc. tortiously interfered with the Company's contractual relationships.[9] The jury awarded damages totaling $1,044,175, approximately $600,000 less than the damages calculated by Defendants' damages expert.[10] On June 30, 2017, we entered judgment against Mr. Kaplan, Mrs. Kaplan, and BLC Beauty, Inc. in the amounts of $966,262.50, $583,132.00, and $583,130.50, respectively.[11]

## II. Analysis

After trial, Defendants moved for judgment as a matter of law under Rule 50,[12] for a new trial under Rule 59(a),[13] to alter or amend the judgment under Rule 59(e), and for remittitur.[14] We deny Defendants' Motions.

### A. We deny Defendants' motion for judgment as a matter of law not properly preserved.

We do not consider the issues raised in Defendants' motion for judgment as a matter of law because Defendants did not properly preserve this motion. Under Federal Rule of Civil Procedure 50(a), a party may move for judgment as a matter of law at any time before the case is submitted to

4

a jury.[15] Such motion may be renewed after trial under Rule 50(b) if it is properly preserved.[16] "In order to preserve an issue for judgment pursuant to Rule 50(b), the moving party must timely move for judgment as a matter of law at the close of the nonmovant's case, pursuant to Rule 50(a), and specify the grounds for that motion."[17] Without a timely motion under Rule 50(a), our "judicial reexamination of the evidence abridges a party's right to a trial by jury."[18]

During the trial, we exercised our discretion under Federal Rule of Evidence 611(a) and—to expedite the presentation of evidence—we required Defendants elicit testimony from its own witnesses when the Company called those witnesses in its case-in-chief.[19] The parties did not object. At the close of the Company's case, Defendants did not move for judgment as a matter of law. Nor did Defendants move for judgment at any point before we submitted the case to the jury. Our mode and order of eliciting testimony from witnesses did not prevent Defendants from making a timely Rule 50 motion. We accordingly do not consider Defendants' arguments regarding the sufficiency of the evidence.

### B. We deny Defendants' Rule 59 Motion for a new trial and their request in the alternative for altered or amended judgment and for remittitur.[20]

Defendants also request a new trial or altered judgment under Rule 59, proffering three arguments: (1) we erred in instructing the jury on Defendants' burden of proof; (2) the jury verdict is irreconcilably inconsistent; and (3) the jury's damages verdict shocks the conscience. These arguments lack merit.

### i. Defendants did not timely object to our jury instruction regarding Defendants' burden of proof.

Defendants contend our instruction on their burden of proof is prejudicial error because it likely misled the jury "into believing the Defendants carried some burden of dis-proving liability

5

in this case."²¹ This objection is untimely because although Defendants objected at trial, they declined our offer for a curative instruction which effectively rendered their objection withdrawn.

Under Federal Rule of Civil Procedure 51, an objection is timely if the party who did not know about the offending instruction "objects promptly after learning that the instruction or request will be, or has been, given or refused."²² If a party fails to timely object, we may only review for plain error affecting "substantial rights."²³ "By mandating on-the-record exceptions, and imposing a penalty for failure to enter them, Rule 51 serves the critical purpose of apprising the trial court of possible errors in the charge and affording the court and the parties an opportunity for correction before submission of the case to the jury."²⁴

During our jury charge, we instructed the jury on Defendants' burden of proof on their affirmative defenses. Defendants objected to this instruction, arguing it improperly informed the jury "if the Defendants don't meet their burden of the preponderance of the evidence, then they lose."²⁵ We offered to provide a curative instruction, but Defendants declined.

Defendants' failure to request a curative instruction renders their belated objection untimely because doing so deprived us of the opportunity to mitigate prejudice. For example, we could have explained to the jury the nature of Defendants' defenses as confirmed to us by their counsel at sidebar and related to our instruction on Defendants' burden of proof to those defenses. We offered to clarify any confusion, but Defendants denied our request. We accordingly must consider whether our instruction constitutes plain error.

### ii. Our instruction on the burden of proof is not plain error.

Our instruction on Defendants' burden of proof on its affirmative defense is not plain error. "A [party] asserting an affirmative defense has the burden of proof as to that affirmative

6

defense."[26] To the extent Defendants asserted an affirmative defense, which they claim they did, their burden of proof would require *at least* a preponderance of the evidence. Our instruction properly reflected Defendants' burden. Even if the Defendants did not assert an affirmative defense, we find no error requiring us to grant a new trial because our instruction was conditional. We explained to the jury our instruction applied "to the extent" Defendants asserted their own defense.[27] We discern no error requiring a new trial.

### iii. The jury's verdict is internally compatible.

Defendants argue the jury's verdict in favor of Defendants on the Company's misappropriation of trade secrets claim is inconsistent with the verdict against Mr. Kaplan and BLC Beauty on the Company's claim for tortious interference with existing or prospective contractual relationships. We disagree. These claims have different elements, and the jury could have reasonably found a failure of proof on the misappropriation claim but not the tortious interference claim. Under the misappropriation claim, the Company had to prove "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the [Company]."[28] Under the tortious interference claim, the Company had to prove:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.[29]

The differences between these claims are abundant and need not be addressed in detail. A

jury could reasonably conclude Mr. Kaplan and BLC interfered with existing or prospective business relationships without misappropriating trade secrets.

### iv. The jury had a reasonable evidentiary basis for their damages award.

Defendant contends the jury's damage award lacked a rational basis and shocks the conscience. We disagree. We may disturb a jury's damages verdict "only if it is so grossly excessive that it shocks the judicial conscience."[30] Our review is "exceedingly narrow" and limited to determining if the jury had a rational, evidentiary basis for their award.[31]

The jury's verdict does not shock the conscience. The Company's expert, a forensic accountant, found actual damages amounting to $1,660,000.[32] The jury awarded actual damages of only $1,044,175. As the jury's damages verdict falls below the amount calculated by the Company's damages expert, we find the jury's damages verdict does not shock the conscience.

### III. Conclusion

The Federal Rules of Civil Procedure embody a preference for raising timely objections. The failure to do so limits our discretion and sometimes requires us to avoid deciding issues on their substantive merits. We reluctantly do so here and deny Defendants' Motion for judgment as a matter of law as not properly preserved. As Defendants provide no basis for us to disturb the judgment, we deny Defendants' Motion for a new trial under Rule 59(a), to alter or amend the judgment under Rule 59(3), and for remittitur.

---

[1] N.T. 6/27/2017, at pp. 58:21–59:09.

[2] 18 U.S.C. § 1962(c).

[3] 12 Pa. C.S. § 5301 *et seq.*

[4] N.T. 6/29/2017, at p. 131:03–06.

8

⁵ N.T. 6/29/2017, at pp. 229:21–230:23.

⁶ N.T. 6/30/2017, at p. 103:10–16.

⁷ N.T. 6/30/2017, at pp. 127:02–128:11.

⁸ ECF Doc. No. 101. The jury rendered a verdict against Mr. Kaplan on the Company's claims against him for RICO, conversion, breach of fiduciary duty, and tortious interference with contractual relationships, but found he did not misappropriate trade secrets. The jury rendered a verdict against Mrs. Kaplan on the Company's claims against her for RICO and conversion, and against BLC Beauty, Inc. on the Company's claims against it for RICO, conversion, and tortious interference with contractual relationships.

⁹ *Id.*

¹⁰ ECF Doc. No. 101.

¹¹ ECF Doc. No. 102. In calculating judgment, we applied the nondiscretionary trebling of damages to the jury's damages verdict on the RICO claims against Defendants.

¹² "Because the jury returned a verdict in favor of the plaintiff, we must examine the record in a light most favorable to the plaintiff, giving her the benefit of all reasonable inferences, even though contrary inferences might reasonably be drawn." *In re Lemington Home for the Aged*, 777 F.3d 620, 626 (3d Cir. 2015) (quoting *Dudley v. S. Jersey Metal, Inc.*, 555 F.2d 96, 101 (3d Cir. 1977)).

¹³ Under Federal Rule of Civil Procedure 59, we may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court," but we should do so "only when 'the great weight of the evidence cuts against the verdict and . . . a miscarriage of justice would result if the verdict were to stand.'" *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) (citations omitted). Our "power to grant a new trial is limited 'to ensure that [we do] not substitute [our] judgment of the facts and the credibility of the witnesses for that of the jury." *Id.* (quoting *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 201 (3d Cir. 1996)). Defendants have the burden of establishing the need for a new trial. *Id.*

¹⁴ "The remittitur is well established as a device employed when the trial judge finds that a decision of the jury is clearly unsupported and/or excessive." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 715–16 (3d Cir. 2010) (quoting *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986)) (brackets omitted). "A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages," so our authority is limited to situations when we believe "the jury's award is *unreasonable* on the facts." *Id.* at 716 (quoting *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1131 (11th Cir. 1999)).

[15] FED. R. CIV. P. 50(a).

[16] FED. R. CIV. P. 50(b).

[17] *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1172–73 (3d Cir. 1993) (citing FED. R. CIV. P. 50(b)).

[18] *Id.* (quoting *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 183 (3d Cir. 1992)). We recognize the law of this Circuit may conflict with the law in the Second Circuit, which creates an exception to this timeliness requirement where doing so is necessary to prevent "manifest injustice." *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (citation omitted). Even if *Stephenson* controlled, it is distinguishable because the court addressed the defendants' purported waiver of a qualified immunity defense, a unique defense which a defendant can raise "even after trial if the plaintiff suffers no prejudice." *Oliver v. Roquet*, 858 F.3d 180, 188 (3d Cir. 2017).

[19] Federal Rule of Evidence 611(a) provides, "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment."

[20] In this motion, Defendants proffer arguments regarding the sufficiency of the evidence. We do not consider these arguments because they were not properly preserved under Rule 50.

[21] ECF Doc. No. 115-2, at p. 16.

[22] FED. R. CIV. P. 51(c)(2)(B).

[23] FED. R. CIV. P. 51(d)(2); *see also Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 340 (3d Cir. 2005).

[24] *Franklin Prescriptions, Inc.*, 424 F.3d at 340 (citing *Fashauer v. N.J. Transit Rail Operations*, 57 F.3d 1269, 1288 (3d Cir. 1995)).

[25] N.T. 6/30/2017, at pp. 127:02–128:11.

[26] *Maryland Cas. Co. v. Preferred Fire Prot., Inc.*, No. 14-245, 2016 WL 836457, at *5 (W.D. Pa. Jan. 28, 2016) (citing *Reott v. Asia Trend, Inc.*, 7 A.3d 830 (Pa. Super. 2010)).

[27] N.T. 6/30/2017, at p. 103:10–16.

[28] *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003).

[29] *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (citing

*Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 530 (3d Cir. 1998)).

[30] *Leonard*, 834 F.3d at 391 (citing *William A. Graham Co. v. Haughey*, 646 F.3d 138, 142 (3d Cir. 2011)).

[31] *Id.* at 392 (quoting *Cortez*, 617 F.3d at 718).

[32] N.T. 6/29/2017, at p. 131:03–06.